IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| MICHAEL BERRIAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 5:13-cv-163 (MTT) (CHW) |
| | : | |
| Warden SHEILA OUBRE, *et al.*, | : | Proceedings under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATION

Now before the Court in this *pro se* prisoner section 1983 action is a Motion to Dismiss filed by the Defendants, Sheila Oubre and Willie Wells. (Doc. 20). The Defendants argue that Plaintiff failed to exhaust his administrative remedies and that he fails to state a claim for relief. The Defendants also invoke the defense of qualified immunity.

As discussed below, the Defendants have not met their burden of showing that Plaintiff failed to exhaust his available administrative remedies. Additionally, Plaintiff has adequately stated a failure-to-protect claim against Defendant Wells, who is not entitled to qualified immunity at this stage in the proceedings. Therefore, it is **RECOMMENDED** that the Defendants' Motion be **GRANTED IN PART and DENIED IN PART** such that (1) Plaintiff's claim against Defendant Oubre be dismissed, and that (2) Plaintiff be allowed to proceed with his failure-to-protect claim against Defendant Wells, in his individual capacity, for damages.

## BACKGROUND

On October 1, 2012, Plaintiff, an inmate, was transferred to Baldwin State Prison ("BSP") for a mental health evaluation. (Compl., Doc. 1, p. 4). On October 16, Plaintiff was released from administrative segregation into the BSP general inmate population by mistake.

(*Id*.). There, Plaintiff was assigned to Dorm M-3, which he describes as an "open dormitory that housed [BSP's] most dangerous inmates," many of whom "possessed weapons and contraband [and] routinely assaulted other inmates, leading to a rate of violence five times higher than that of the prison's other dormitories." (Resp., Doc. 28, p. 2). Plaintiff claims that he asked Defendant Willie Wells, a BSP officer, for placement in protective custody, but that Wells refused. (Pl.'s Second Suppl., Doc. 9, p. 1; Resp., Doc. 28, p. 2). Later in the evening on October 16, Plaintiff claims he was "Tied up, Blind folded . . . Gaged with a sock" and then "beaten and drag[ged] around [his] dorm floor and kicked on for almost a[] whole hour or longer." (Compl., Doc. 1, p. 3). This attack, perpetrated by fellow inmates, left Plaintiff with a broken nose and a fractured right eye socket, and Plaintiff has since undergone two surgical procedures, one on October 25, 2012, and one on February 28, 2013. (*Id.*, pp. 3-4).

The Defendants in this action are Sheila Oubre, the former Warden of BSP, and Willie Wells, the aforementioned corrections officer. Plaintiff claims that both Oubre and Wells knew, due to "frequent shakedowns" and the "close security" classification of many of its prisoners, that Dorm M-3 was an "unaccep[tably] dangerous prison environment." (Pl.'s First Supp., Doc. 6, pp. 4-5). Plaintiff sues Defendant Wells both for denying his protective-custody request and also for failing to conduct required half-hourly patrols or "post checks" during the time of the attack. (Compl., Doc. 1, p. 3; Pl.'s Second Supp., Doc. 9, pp. 2-3; Defs.' Br., Doc. 20-1, p. 1; Resp., Doc. 28, p. 2). Plaintiff sues Defendant Oubre for "fail[ing] to ensure that her officers monitored inmates to prevent violence." (Resp., Doc. 28, pp. 2, 12-13). *See generally Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994) ("prison officials have a duty … to protect prisoners from violence at the hands of other prisoners").

## AVAILABLE RELIEF

Plaintiff requests both compensatory and punitive damages, as well as a "permanent injunction ordering Defendants Sheila Oubre [and] officer Willie Wells to take all precaution[ary] [measures] in keeping Plaintiff safe." (Pl.'s First Supp., Doc. 6, p. 6). Plaintiff is no longer housed at BSP, so his claim for injunctive relief is now moot. *See Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("an inmate's claim for injunctive … relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred"); *see also Reich v. OSHRC*, 102 F.3d 1200, 1201 (11th Cir. 1997). Additionally, Plaintiff may not sue the Defendants, in their official capacities, for damages. *See Will v. Mich. Dept. of State Police, et al.*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). Therefore, Plaintiff may only properly proceed on his damages claims, and only against the Defendants in their individual capacities.

## EXHAUSTION

The Defendants, in their Motion to Dismiss, first argue that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). Because the Defendants did not meet their burden of showing that Plaintiff failed to exhaust his *available* administrative remedies, though, this action should not be dismissed for failure to exhaust.

### A. Legal Standard

The PLRA requires that prisoners exhaust "such administrative remedies as are available" prior to pursuing a section 1983 lawsuit. 42 U.S.C. § 1997e(a). As a result, "when a state provides a grievance procedure for its prisoners, an inmate alleging harm suffered from prison conditions must … exhaust the remedies available under that [grievance] procedure before

3

pursuing a § 1983 lawsuit." *Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008) ("exhaustion is . . . a precondition to an adjudication on the merits").

The resolution of motions to dismiss for failure to exhaust involves a two-step process. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). At step one, the Court "looks to the factual allegations . . . and if they conflict, [the Court] takes the [P]laintiff's version of the facts as true." *Id.* If the defendants are nevertheless entitled to have the complaint dismissed for failure to exhaust, the Court must dismiss the complaint. *Id.* If, however, the complaint is not subject to dismissal at step one, the Court proceeds to step two, where it "make[s] specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* At step two, "[t]he defendants bear the burden of proving that the plaintiff . . . failed to exhaust his available administrative remedies." *Id.*

### B. <u>Analysis</u>

According to the normal grievance procedures in place on October 16, 2012, the day of Plaintiff's attack, Plaintiff had 10 days in which to file an informal grievance. (Defs.' Ex. A, Doc. 20-2, p. 7). In the days following the attack, however, Plaintiff claims that he "wasn't in [a] condition to use [his] eyes," and also that he "could[n't] get a grievance while on [the BSP] medical floor" where he was assigned from October 16 to October 31. (Compl., Doc. 1, p. 2; Doc. 27, p. 3; Resp. Doc. 28, pp. 3-4). Plaintiff argues that he filed an out-of-time informal grievance at the earliest possible date, on October 31, and that he then attempted, unsuccessfully, to appeal the denial of that grievance. (Compl., Doc. 1, p. 2; Pl.'s First Supp., Doc. 6, p. 3; Resp., Doc. 28, pp. 4-5). Copies of both Plaintiff's October 31 informal grievance form, as well as what appears to be Plaintiff's appeal form, are in the record, (Doc. 27, pp. 8, 10), and both grievance forms corroborate Plaintiff's account of events.

The Defendants did not address Plaintiff's grievance forms in their filings. Instead, relying on the affidavit Cherie Price, the BSP Deputy Warden of Care and Treatment, the Defendants claim that (i) Plaintiff did not file an informal grievance on October 31; and that (ii) even if Plaintiff filed a grievance on October 31, his grievance was untimely. (Reply, Doc. 29, pp. 1-3).

Regarding the Defendants' first point, Deputy Price's assertions are not alone sufficient to rebut the strong presumption of exhaustion raised by Plaintiff's grievance forms in the record. Without at least some discussion of these grievance forms, one of which bears the signature of "MS. Price," (Doc. 27, p. 8), the Defendants should not be found to have met their burden at *Turner*'s second step.

Regarding the Defendants' second point, it is well settled that "[a] remedy has to be available before it must be exhausted." *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008). Plaintiff argues that he had no access to grievances from October 16 to October 31, and while the Defendants acknowledge Plaintiff's argument, they offer neither an explanation nor a counterargument. (Reply, Doc. 29, p. 2). Because there is insufficient evidence in the record concerning the availability of administrative remedies during the period following Plaintiff's October 16 attack, Plaintiff's action should not be dismissed based solely on his failure to comply with the normal 10-day grievance deadline.

## FAILURE TO STATE A CLAIM FOR RELIEF

The Defendants also argue that Plaintiff fails to state a claim for relief and, as discussed below, this argument is partly persuasive. Plaintiff appears to sue Defendant Oubre in a supervisory capacity, but because Plaintiff failed to allege facts showing "personal participation" or a "causal connection," Plaintiff's claim against Defendant Oubre must be dismissed.

Regarding Defendant Wells, however, Plaintiff has pled sufficient facts to state a failure-to-protect claim, and Defendant Wells has not demonstrated that he is entitled to qualified immunity at this stage in the proceedings. Therefore, it is recommended that Plaintiff be allowed to proceed with his failure-to-protect claim against Defendant Wells.

### A. Legal Standard

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss for failure to state a claim, the Court must accept all allegations in the complaint as true, and must construe the facts in the light most favorable to the plaintiff. *Lopez v. Target Corp.*, 676 F.3d 1230, 1232 (11th Cir. 2012). Additionally, *pro se* pleadings are to be liberally construed. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011). That said, the Court is not bound to accept as true "a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### B. Analysis of Plaintiff's Claim Against Defendant Wells

To survive a motion to dismiss, a plaintiff advancing a failure-to-protect claim must allege facts showing "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *See Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). The second prong, the "deliberate indifference" prong, has both an objective and a subjective component: the plaintiff must allege facts showing that (a) the defendants subjectively

6

knew of the risk, but that (b) they nevertheless disregarded that risk by failing to act in an objectively reasonable manner.

Plaintiff alleges that (1) the conditions in Dorm M-3 posed a substantial risk of serious harm; that (2) Defendant Wells (a) knew of the risks associated with Dorm M-3, but (b) acted unreasonably by failing to patrol and by failing to grant Plaintiff's request to be placed in protective custody; and finally that (3) Defendant Wells' failure to patrol and failure to place Plaintiff in protective custody "caused" the October 16 attack. As discussed below, these allegations are sufficient to state a plausible claim for relief. Accordingly, Plaintiff should be allowed to proceed with his failure-to-protect claim against Defendant Wells.

(1) Substantial Risk of Serious Harm

Plaintiff's allegations are sufficient to indicate that the conditions in his dormitory posed a substantial risk of serious harm. Plaintiff alleges that Dorm M-3 was an "open dormitory that housed [BSP's] most dangerous inmates," many of whom "possessed weapons and contraband [and] routinely assaulted other inmates, leading to a rate of violence five times higher than that of the prison's other dormitories." (Resp., Doc. 28, p. 2). Plaintiff also claims that he asked Defendant Willie Wells, a BSP officer, for placement in protective custody on his first day in Dorm M-3. Allegations such as these which indicate that regularly occurring inmate-on-inmate violence is the norm are sufficient, at the pleading stage, to show a substantial risk of serious harm. *Cf. Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582-83 (11th Cir. 1995) (finding that evidence of regularly occurring inmate-on-inmate violence supported a claim that a substantial risk of serious harm existed in an overcrowded jail holding cell).[1]

---

[1] Although the *Hale* Court affirmed summary judgment in favor of a defendant officer who failed to conduct his customary half-hourly rounds during an alleged prisoner attack, the instant case is distinguishable because it is currently in the pleading stage, and therefore the Court must accept Plaintiff's plausible, fact-based allegations

There is no requirement that failure-to-protect plaintiffs allege facts showing a "particularized threat of harm" evidenced by a "specific threat or incident," as Defendant Wells appears to argue. (Defs.' Br., Doc. 20-1, p. 11; Reply, Doc. 29, p. 5). Rather, both Eleventh Circuit and Supreme Court precedent suggest that general, impersonal risk may sometimes pose a substantial risk of serious harm. In *Farmer v. Brennan*, for example, the Supreme Court noted that:

> [A] prison official [may not] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault . . . . [Nor does it] matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.
>
> 511 U.S. 825, 843 (1994).

Citing *Farmer*, the Eleventh Circuit noted in *Hale v. Tallapoosa County* that failure-to-protect plaintiffs are "not required to show . . . precisely who would attack whom . . . but only that [the defendants] had subjective knowledge of a *generalized, substantial risk of serious harm from inmate violence*." 50 F.3d at 1583 (internal quotations omitted) (emphasis added). Because both *Hale* and *Farmer* counsel against any absolute rule requiring allegations of a "particularized threat of harm," and because Plaintiff's allegations plausibly show that he was exposed to an excessive risk of violence in Dorm M-3, Plaintiff has adequately pled facts demonstrating a substantial risk of serious harm.

---

as true. In this regard, many of the cases cited by the Defendants were resolved at the summary judgment stage. While these cases are generally informative, they are not controlling on the issue of whether or not Plaintiff has stated a plausible claim for relief.

(2) <u>Deliberate Indifference</u>

 (a) *Subjective Knowledge*

Plaintiff has also pled facts sufficient to satisfy the subjective-knowledge prong of the "deliberate indifference" test. Plaintiff argues, and Defendant Wells does not appear to contest,[2] that (a) Defendant Wells knew of the general risk of violence in Dorm M-3; and that (b) Plaintiff asked Defendant Wells for placement in protective custody. Taken as true, these allegations are sufficient to show that Defendant Wells had "actual knowledge" of the risk of harm to Plaintiff. *Farmer*, 511 U.S. at 842.

 (b) *Unreasonable Conduct*

Regarding the objective reasonableness of his conduct, Defendant Wells argues only that his alleged violation of BSP standard operating procedures requiring regular "post checks" does not, in and of itself, indicate that that he acted in an objectively unreasonable manner. (Defs.' Br., Doc. 20-1, p. 11; Reply, Doc. 29, p. 6). Although a mere failure to abide by standard operating procedures cannot alone establish deliberate indifference, other allegations raised Plaintiff's complaint are sufficient to show, at this stage in the proceedings, that Wells acted in an objectively unreasonable manner.

In a case with comparable facts, an unpublished decision by the Eleventh Circuit indicates that dismissal is not warranted in this case. *See Losey v. Warden*, 521 F. App'x 717 (11th Cir. 2013). In *Losey*, the Eleventh Circuit held that a prisoner who was raped by another prisoner had adequately stated a claim for relief against a defendant corrections officer. The alleged incident took place in area of the prison housing inmates classified as dangerous.

---

[2] It is not, in fact, clear that Wells' subjective-knowledge argument is distinct from his substantial-risk-of-serious-harm argument. Regarding both prongs, Wells merely argued that Plaintiff "must show that the defendants were aware of a 'particularized threat or fear.' (Defs.' Br., Doc. 20-1, p. 10).

9

According to the complaint, the defendant officer conducted an "unofficial count" at the time of the assault but failed to look into the cell where the assault occurred or to take any action to protect the plaintiff. The plaintiff alleged that standard procedure required the defendant officer to look through the cell-window of the plaintiff's assailant and that the officer "either looked into the cell and did not care what she saw, or she did not care to look at all." 521 F. App'x at 720.

The present case is similar to *Losey* in that Plaintiff alleges that Defendant Wells' failure to comply with procedure was accompanied by a known risk of harm. Plaintiff alleges that Defendant Wells knew about the dangerous conditions in Dorm M-3 and knew that Plaintiff had requested protective custody, but that he nevertheless failed to conduct "post checks" as required by standard operating procedure. These facts are sufficient to state a claim of deliberate indifference at the pleading stage.

(3) Causation

In the context of a section 1983 action involving allegedly deficient prison conditions posing an excessive risk of violence, causation comes in two varieties: individualized and generalized. *See, e.g., Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982). Individualized causation requires a link between the defendant's deliberately indifferent acts or omissions on the one hand, and the excessive risk of violence on the other. *See, e.g., Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1584 (11th Cir. 1995). Generalized causation, by contrast, requires a link between the excessive risk of violence and the injury inflicted. *Id.*

Neither party explicitly addressed the causation prong of the "deliberate indifference" test, but Plaintiff clearly alleges that Defendant Wells could have reduced the risk of violence in Dorm M-3 by both granting Plaintiff's request for protective custody, and by conducting "patrol checks" as required by BSP standard operating procedure. In other words, Plaintiff alleges that

Defendant Wells was "in a position to take steps that could have averted" the attack. *See LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993) (quoting *Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982)). At the pleading stage, at least, these allegations are sufficient to establish the necessary causal connection between Defendant Wells' conduct and the risk of violence in Dorm M-3. *See LaMarca*, 995 F.2d 1538-39.

(4) <u>Qualified Immunity</u>

Defendant Wells has also raised the defense of qualified immunity. That Defendant Wells was acting in his discretionary authority as a corrections officer on October 16 seems clear. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) ("In order to receive qualified immunity, [a] public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred") (internal quotations omitted). As a result, the burden shifts to Plaintiff to show that qualified immunity is not appropriate. *Id.*

Of course, Rule 12(b)(6) and the defense of qualified immunity are "intertwined" at the pleading stage such that "Defendants are entitled to qualified immunity in a Rule 12(b)(6) motion … only if the complaint fails to allege facts that would show a violation of a clearly established constitutional right." *See, e.g., Kyle K. v. Chapman*, 208 F.3d 940, 942 (11th Cir. 2000). Because Plaintiff has adequately stated a failure-to-protect claim against Defendant Wells, and because the right to be free from harm or the excessive risk of harm at the hands of prisoners is "clearly established," Plaintiff has met his burden of showing that qualified immunity is inappropriate at this stage in the proceedings.

C. **<u>Analysis of Plaintiff's Claim Against Defendant Oubre</u>**

Although Plaintiff should be allowed to proceed with his failure-to-protect claim against Defendant Wells, Plaintiff's claim against Defendant Oubre fails to set forth facts sufficient to

establish supervisory liability. "It is well established . . . that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Rather, "supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.*

Plaintiff's only non-conclusory claim against Defendant Oubre is that she "failed to ensure that her officers monitored inmates to prevent violence." (Resp., Doc. 28, p. 2). Nothing in the record suggests that Defendant Oubre "personally participated" in the events surrounding the October 16 attack. Similarly, Plaintiff failed to allege facts suggesting that Defendant Oubre was "on notice" of a history, custom or policy resulting in widespread abuse, and that she failed to respond in a reasonable manner. *See Cottone*, 326 F.3d at 1360. Plaintiff does claim that Defendant Oubre was aware of the dangerous conditions in Dorm M-3, (Pl.'s First Supp., Doc. 6, p. 4), but this fact alone does not establish a "causal connection" between Defendant Oubre and Defendant Wells' alleged unreasonable conduct. *Cf, Cottone*, 326 F.3d at 1361-62. Absent allegations establishing such a causal connection, therefore, Plaintiff's claim against Defendant Oubre should be dismissed.

## CONCLUSION

In accordance with the analysis above, it is **RECOMMENDED** that the Defendants' Motion to Dismiss (Doc. 20) be **GRANTED IN PART and DENIED IN PART** such that (1) Plaintiff's claim against Defendant Oubre be dismissed, and that (2) Plaintiff be allowed to proceed with his failure-to-protect claim against Defendant Wells, in his individual capacity, for damages.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 6th day of May, 2014.

s/ Charles H. Weigle<br>
Charles H. Weigle<br>
United States Magistrate Judge